# UNITED STATES DISTRICT COURT
для
Western District of Arkansas

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Jun 6, 2024
OFFICE OF THE CLERK

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Apple iPhone bearing serial number F2LFN2120D4C )
and assigned IMEI number 357014742716228 )
)
)

Case No. 1:24-cm-16

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Western___ District of ___Arkansas___ *(identify the person or describe property to be searched and give its location):* See "Attachment A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See "Attachment B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1001 et al.___, and the application is based on these facts: See "Affidavit attachment"

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Issac Brown Jr. (telephonically)
*Applicant's signature*

Issac Brown, Jr., FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6-6-24

*Judge's signature*

City and state: El Dorado, Arkansas        HON. BARRY A. BRYANT, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Issac Brown Jr., a Special Agent with the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I submit this affidavit in support of an application for a warrant authorizing the seizure and search of a black Apple iPhone bearing serial number F2LFN2120D4C and assigned IMEI number 357014742716228 (which is further described in Attachment A hereto) (hereinafter the "**Subject Phone**"). Specifically, there is probable cause to believe that there is currently located on and within the **Subject Phone** evidence, fruits, and instrumentalities related to false information provided to banks to acquire Paycheck Protection Program ("PPP") loans intended for business affected by the COVID-19 pandemic, in violation of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1001 (False Statement).

2.  I am a Special Agent with the FBI and have been since September 2021. I am currently assigned to the Little Rock Division, El Dorado Resident Agency where I am charged with investigating violations of various federal laws. I have been trained and/or involved in various aspects of criminal investigations, including among other things, conducting victim/witness/subject interviews, debriefing defendants, sources, and informants; conducting surveillance or undercover operations; executing arrest and search warrants; monitoring Title III wiretaps; and analyzing documentary and physical evidence. During my employment with the FBI, I have received investigative training concerning fraud, violent crimes, corruption, civil rights, and have been involved in the investigations of numerous federal offenses. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. §2510(7), and I am empowered by

1

law to conduct investigations and to make arrests for federal felony offenses. As part of my duties as a Special Agent with the FBI, I have participated in and directed investigations involving various types of fraud and, as a result of my training and experience, I am familiar with the tactics, methods, and techniques of committing these various types of fraud related violations of federal law.

3. The information in this affidavit is based upon my personal knowledge, as well as information learned from other law enforcement agencies, investigators, witnesses, and documents. This affidavit is submitted for the limited purpose of obtaining authorization for a search warrant; as such, it does not include each fact known to the government about this investigation.

4. Based on the facts set forth in the affidavit, I respectfully submit that there is probable cause to believe that the information described in Attachment A contains evidence, fruits, and instrumentalities related to false information provided to banks in order to acquire Paycheck Protection Program ("PPP") loans intended for business affected by the COVID-19 pandemic, in violation of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1001 (False Statement).

### Background on SBA-Paycheck Protection Program (PPP) Loans

6. On March 27, 2020, the United States Government enacted the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which provided economic stimulus for individuals and businesses affected by the Coronavirus pandemic. This economic stimulus includes the Paycheck Protection Program (PPP): a series of forgivable loans, guaranteed by the Small Business Administration---an agency of the United States government. In April 2020, the CARES Act provided relief through an authorization of up to $349 billion in SBA-guaranteed forgivable loans to small businesses through the PPP.

2

7. To obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expense; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

8. A PPP loan application must be processed by a participating lender. If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration (SBA). Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA while processing the loan.

9. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period after receiving the proceeds and uses a certain amount of the PPP loan proceeds on payroll expenses.

10. The PPP allows qualifying small-businesses and other organizations to receive loans with a maturity of two years and an interest rate of 1 percent. PPP loan proceeds must be used by businesses on payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal to be forgiven if businesses spend the proceeds on these expenses within eight weeks of receipt and use at least 75 percent of the forgiven amount for payroll.

## PROBABLE CAUSE

11. I believe the **Subject Phone** contains evidence related to PPP loan applications containing material misrepresentations to a financial institution acting on behalf of the SBA, which is a federal agency.

## SHAWN CAREY's LOAN APPLICATION

12. On or about April 2021, CAREY applied for a PPP loan from Harvest Small Business Finance, LLC. According to the Harvest Small Business Finance, LLC website, Harvest Small Business Finance, LLC is a non-bank lender headquartered in Laguna Hills, California. CAREY electronically signed the loan document on April 09, 2021. The application sought a PPP loan for a business named "SHAWN CAREY," and listed CAREY as the sole proprietor of the business (SBA loan number 1122******). The business listed a gross income of $53,360.00.

13. The application contained a PPP Borrower Application Form (SBA Form 2483) and supporting documentation. The signature on the loan application was somewhat illegible, but the signature started with "Sha" followed by a large "C," and was signed on April 09, 2021. The printed name below the signature read "Shawn Carey." The application requested a PPP loan of $12,366.00. The business address on the application is 530 Meadow Lane, El Dorado, AR 71730, which agents know, according to various law-enforcement database checks and previous law enforcement interaction, to be CAREY's known residence.

14. Page two of the SBA Form 2482 includes a list of questions that must be answered "Yes" or "No." There is a statement above the questions which reads *"if questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved."* In addition, question 5 and 6 require initials along with the yes or no answer. Question 6 reads as follows: *Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an*

4

*application for federal financial assistance, has the Applicant (if an individual) or any owner of the Application 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?* Question 6 on the loan application is answered "No," and is initialed "CS." However, at the time of application and through March 2022, CAREY was on supervised release in the Western District of Arkansas following her 2016 convictions for Conspiracy to Defraud the Government with Respect to Claims (18 U.S.C. § 286) and Aggravated Identity Theft (18 U.S.C. § 1028A) in case No. 1:13-cr-10026-SOH-3.

15. Page three of the SBA Form 2483 includes a list of certification statements that must be initialed by the borrower. The initials of "CS" are beside all the certifications, including one that reads as follows: "I further certify that *the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects*. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000." (Emphasis added). CAREY submitted as a supporting document for the PPP loan application a copy of Internal Revenue Service (IRS) Schedule C (Form 1040). The Schedule C lists a principal business as "SHAWN CAREY," and CAREY is listed as the proprietor of the business. The Schedule C lists a gross profit of $59,360.00.

16. On January 20, 2022, CAREY was interviewed by law enforcement agents related to the PPP loan application in her name. During the interview, CAREY claimed her cousin, Brianna Blackmon (BLACKMON) completed the PPP loan application on CAREY's behalf. CAREY stated she did not own a business as represented in the application and was in fact on disability and unable to work. CAREY advised BLACKMON completed CAREY's PPP loan application electronically on BLACKMON's cellular phone while at CAREY's residence. CAREY said she was present while BLACKMON was completing CAREY's PPP loan application, and she went through the application with BLACKMON as she filled it out. CAREY stated the loan was approved and the $12,366 was deposited into CAREY's Simmons Banks account. CAREY advised the Simmons Bank account was opened for her disability check deposits.

17. CAREY said BLACKMON told her she could do CAREY's loan for her and get her "some stacks," or money. CAREY said she paid BLACKMON $6,000 for her to complete CAREY's PPP loan application on CAREY's behalf. CAREY stated that once the PPP funds were deposited into her account, she then went to Simmons Bank the next day and withdrew the $6,000 cash so that she could pay BLACKMON. During the interview, CAREY commented that she didn't want to apply for the PPP loan at first because she was scared. CAREY clarified this by saying she was about to get off probation and she didn't want to go back to prison. CAREY advised that she understood that her PPP loan application contained false information.

18. CAREY provided several names of individuals that BLACKMON had allegedly done PPP loan applications for in return for monetary compensation. CAREY said BLACKMON would request the name, social security number, photo id, and banking information for a certain individual, then she would complete their PPP loan application. CAREY said she communicated with BLACKMON via CAREY's cellular phone (**Subject Phone**), and stated she had photos of

6

BLACKMON and other information on the **Subject Phone** that would show BLACKMON's involvement in PPP loan fraud. According to CAREY, this information was on the **Subject Phone** because CAREY sold BLACKMON her old Apple iPhone, which was linked to the same iCloud account as the **Subject Phone.** As such, when BLACKMON would save screenshots and photos, this information was going to the **Subject Phone** because both phones were linked to CAREY's iCloud account. CAREY stated BLACKMON was unaware of this until CAREY informed her sometime later. CAREY provided consent for agents to search the **Subject Phone**, and voluntarily showed agents a photo of a female holding a large amount of cash. CAREY advised the female in the photo was BLACKMON. CAREY also showed agents screenshots of messages which included the identifiers of several individuals to include the name, address, social security number, etc. CAREY said **the Subject Phone** would also contain other evidence which would show BLACKMON's involvement in PPP loan fraud.

19. During the cursory review of the **Subject Phone** via consent, agents observed it was linked to Apple ID SHAWNCAREY883@GMAIL.COM.. In addition, according to CAREY, the iPhone BLACKMON purchased from CAREY was also linked to the above referenced Apple ID around the time the fraudulent activity was occurring, allowing for CAREY to view the alleged fraudulent activity on the **Subject Phone.** Upon attempting to conduct a full forensic review of **Subject Phone** via consent, agents identified the phone required a unique numerical sequence, which CAREY was unable to provide.

20. On February 02, 2022, a federal search warrant for the **Subject Phone** was issued and signed by United States Magistrate Judge Barry A. Bryant. Due to technical limitations with the **Subject Phone's** software updates and the limited capability of the FBI digital forensic team at the time of the warrant's issuance, the **Subject Phone** was not forensically examined by the

7

warrant expiration date of February 17, 2022. As such, the **Subject Phone** has been securely stored in FBI custody, pending updated digital forensic capability to support the forensic examination of the device.

21. On or about May 2024, the FBI digital forensic team notified the Affiant of several updates in forensic examination techniques, which would potentially allow for the examination of the **Subject Phone.**

22. As such, I respectfully submit that there is probable cause to believe above referenced **Subject Phone** contains evidence, fruits, and instrumentalities related to false information provided to banks to acquire Paycheck Protection Program ("PPP") loans intended for businesses affected by the COVID-19 pandemic, in violation of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1001 (False Statement).

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my training, experience, and research, I have probable cause to believe the **Subject Phone** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation data, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25. Based on my training and experience, I have learned that cell phone technology is rapidly evolving. In addition to enabling voice communications, cell phones now offer a broad

range of capabilities, which may include but are not limited to: storing names and phone numbers in electronic "address books"; storing dates, appointments, and other information on personal calendars; sending, receiving, and storing text messages, picture messages, and e-mail; taking, sending, receiving, storing, and displaying/playing still photographs, video files, and audio files; and accessing and downloading information from the Internet. A cell phone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition, cell phones now have the capability to store greater amounts of information and to store this information for long periods of time. Many cell phones utilize Secure Disk (SD) technology, including mini SD and micro SD cards; these cards can contain memory ranging in size from megabytes to gigabytes of information, and they are able to store hours of video, thousands of photos, and other types of electronic data.

26. As further described in Attachment B, this application seeks permission to locate not only files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the **Subject Phone** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be on the **Subject Phone** described in Attachment A because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as

9

the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the electronic device was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on an electronic is evidence may depend on other information stored on the electronic device and the application of knowledge about how an electronic device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## SPECIFICS OF SEARCH AND SEIZURE OF ELECTRONIC DEVICES

27. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize electronic devices hardware, software, documentation, passwords, and data

security devices which are (1) instrumentalities, fruits, or evidence of crime; or (2) storage devices for information about crime. Based on my own experience and consultation with others who have been involved in the seizure and search of electronic devices and retrieval of data from electronic device systems, there are several reasons why electronic devices often must be seized to permit a later, more thorough search and analysis by qualified experts in a laboratory or other controlled environment.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Phone** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant. The warrant would permit the imaging or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.

## CONCLUSION

29. Based upon the foregoing, there is probable cause to believe the **Subject Phone** as described in Attachment A, contains records and information including evidence of violations of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1001 (False Statement) as set forth in Attachment B. Therefore, I respectfully request this Court to issue a warrant to search as set forth above.

Respectfully submitted,

/S/ Issac Brown Jr. (telephonically)
Issac Brown Jr.
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _June 6,_ , 2024

_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

This search warrant applies to the black Apple iPhone bearing serial number F2LFN2120D4C and assigned IMEI number 357014742716228 (the **"Subject Phone"**) which is currently in the possession of the Federal Bureau of Investigation (FBI) Little Rock Division.

## ATTACHMENT B

### Particular Things to be Seized

1. Contraband, as well as fruits, instrumentalities, and evidence of any conspiracy to defraud the government with respect to claims, in violation of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1001 (False Statement), 18 U.S.C. 1957 (money laundering), including but not limited to:

   1. Documents, records, or correspondence that may relate in any way to the solicitation, preparation, submission, or receipt of PPP loans.

   2. Documents, records, or correspondence that may relate in any way to the possession or use of any bank credits or funds, access device cards, or related to any access device card provider;

   3. Any documents or records reflecting personally identifiable information, including names, social security numbers, dates of birth, driver's license numbers, credit card numbers, IRS Forms, and state and federal employment tax records and bank account information ("PII"), how or where PII was used, or where PII was acquired, and all items or documents that when used alone or in combination with another, can establish an identity;

   4. Receipts or other records of withdrawals from accounts at financial institutions, reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, checks deposited, withdrawal slips, cashier's checks, money orders, wire transfers, and any checks issued for withdrawals;

   5. Financial records, including bank records;

   6. Employment records, including but not limited to, paystubs, payroll receipts, payroll ledgers and registers, work logs, records of earnings by pay period, paid or unpaid periods of employment, earnings statements, rates of pay, changes in rates of pay and effective dates of such changes, requests for disposition or deposit of paychecks, cancelled paychecks (front and back), notes and correspondence to and from employer, and records reflecting dates of employment, changes in employment, promotions, demotions and termination of employment;

   7. Books, records, lists, receipts, passbooks, canceled checks, income and expense summaries, financial statements, state and federal income tax returns, records of credit

card accounts, brokerage accounts, certificates of deposits, wire transfers and other disbursements of funds, in whatever format;

8. All documents and items tending to show purchase, ownership, and/or control over the **Subject Phone;**

9. Records, documents, or correspondence regarding money transfers or other disbursements of funds or other items of value, whether in-person or through a financial institution, mobile application platform, peer to peer transfer, or any other method of transfer, as well as financial account information, statements, receipts for financial instruments, or other financial records that could contain evidence related to these money transfers or disbursements of funds or other items of value;

10. Video, pictures, text messages, chats, voice mails, social media posts, and any other records stored or created on any Electronic Device regarding the possession and/or use of PII or access devices, PPP loans, other state or federal benefits, and/or spending the proceeds of fraud, and/or reflecting ownership and control over the **Subject Phone;**

11. Records, documents, communications, correspondence, electronic files, diaries, envelopes, labels, notes, e-mails, address or contact lists, text messages, instant messages, chats, Internet history, Internet search history, records of "bookmarked" or "favorite" webpages, user-typed web addresses, records of Internet activity, Internet Protocol addresses, cookies, timestamps, text message logs, instant message logs, other logs, user profiles, registry information, configuration files, visual depictions, audio recordings or files, GPS tracking data, and other data or metadata;

12. Evidence of who used, owned, or controlled the Electronic Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

13. Documents, programs, devices, records, or correspondence designed to hide, falsify, or otherwise obstruct the display or production of an Internet Protocol address, or designed to allow the sharing of Internet access by multiple people while making it appear that all users come from the same IP address;

14. Accounts with any Internet service or online data storage providers, cell phone providers, websites, online groups, or online services; passwords, usernames or other identifiers associated with these accounts; and credit/debit card account and other payment information. This warrant authorizes the identification of such accounts (including identifiers and payment methods as listed), but not a search of their contents;

15. Records evidencing the use of the Internet Protocol logs captured by the **Subject Phone**, including records of, or information about, the Internet Protocol addresses used;

16. Evidence of the attachment to the **Subject Phone** of other storage devices or similar containers for electronic evidence;

17. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the **Subject Phone**;

18. Evidence of the times the **Subject Phone** was used;

19. Passwords, encryption keys, and other access devices that may be necessary to access the **Subject Phone**;